UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES FOR THE USE                                                    PLAINTIFF
AND BENEFIT OF TERRAL
RIVER SERVICE, INC.

V.                                                        CIVIL ACTION NO. 3:19-CV-508-DPJ-FKB

ROAD BUILDERS, INC., AND                                                    DEFENDANTS
WESTERN SURETY COMPANY

ORDER

Plaintiff Terral River Service, Inc., has filed three motions in limine in this breach-of-maritime-contract case, all aimed at excluding evidence relevant to Defendant Road Builders, Inc.'s anticipated defenses. As set forth below, all three motions are denied. The first motion [97], addressing alleged hearsay statements by Joe Augustine, is denied without prejudice. The second two [100, 103] are denied because they are essentially delinquent dispositive motions.

I.      Factual Allegations and Procedural History

In 2017, the Army Corps of Engineers awarded Road Builders a contract to repair riverbanks and dikes in a section of the Mississippi River in Issaquena County, Mississippi. Terral River alleges that on August 9, 2018, Road Builders' then-president, Joe Augustine, entered an oral contract on its behalf whereby Road Builders would purchase "a quantity/type of rock from Terral River" for use in the project. Compl. [1] ¶ 9. Terral River says it "agreed to transport and provide [the rock] to Road Builders," *id.*, on the following conditions:

> a) That Road Builders would have "one day free per barge" to unload such rock, from Terral River's barges, upon arrival of such barges[] at [the] job site; and
>
> b) Should Road Builders fail to unload such barges[] within that timeframe, that Road Builders would pay Terral River[] Three Hundred Fifty dollars ($350.00) per day, per barge, as "demurrage,"

*id.* ¶ 11.

Later that month, Terral River "advised Road Builders that [12] barges[] loaded with this rock[] were expected to arrive at th[e] job site on/about August 29, 2018." *Id.* ¶ 14.  Road Builders allegedly responded by telling Terral River that its unloading rig would not be ready by that date.  *Id.* ¶ 15.  So it "directed Terral River to take the[] barges to Terral River's Commercial Fleet, located a short distance from Road Builders' construction site . . . and 'fleet' the[] barges until Road Builders[] could arrange to unload them."  *Id.* ¶ 16.  According to Terral River, "Road Builders agreed to pay Terral River's per day/per barge/customary fleeting/switching charges[] for the length of time that the[] barges remained in such fleet[] awaiting the unloading of the[] barges by Road Builders."  *Id.* ¶ 19.

The 12 barges "remained in Terral River's fleet from August 29, 2018[,] to October 20, 2018."  *Id.* ¶ 22.  Between October 20 and October 26, 2018, Road Builders unloaded 3 of the 12 barges, *id.* ¶ 23, but it did nothing more with the remaining 9 barges until it sold them to a third party on May 7, 2019, *id.* ¶ 40.

Alleging that Road Builders breached the oral contract to purchase the rock, on July 22, 2019, Terral River sued Road Builders and Western Surety Company, from which Road Builders purchased a nearly $3 million payment bond in connection with the project.

After the discovery period closed, the dispositive-motion deadline came and went with no party moving for summary judgment.  Instead, on March 1, 2021—nearly six months after the September 18, 2020 dispositive-motion deadline expired, Terral River asked Judge Ball for leave to file several out-of-time motions for partial summary judgment as to some of Road Builders' affirmative defenses.  Judge Ball denied the request, and Terral River objected under Federal Rule of Civil Procedure 72.  On June 29, 2021, the undersigned overruled Terral River's objections.  *See* Order [96].  Terral River then filed the three pending motions in limine.  Mots.

[97, 100, 103].  Road Builders responded in opposition; Terral River failed to file replies, and the time to do so under the local rules has now expired.

II.     Standard

As summarized by the Fifth Circuit Court of Appeals:

> A motion in limine is a motion made prior to trial for the purpose of prohibiting opposing counsel from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds.

*O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 n.1 (5th Cir. 1977) (quoting Robert T. Hyde, Jr., Commentary, The Motion in Limine:  Pretrial Trump Card in Civil Litigation, 27 U. Fla. L. Rev. 531, 531 (1975)).  An order granting a motion in limine does not preclude the party sponsoring the evidence from revisiting the issue at trial, but that party must raise the issue outside the jury's presence.  *See El-Bawab v. Jackson State Univ.*, No. 3:15-CV-733-DPJ-FKB, 2018 WL 3715836, at *2 n.1 (S.D. Miss. Aug. 3, 2018).  Importantly, "a motion in limine cannot be a substitute for a motion for summary judgment, a motion to dismiss, or a motion for directed verdict."  *Morgan v. Mississippi*, No. 2:07-CV-15-MTP, 2009 WL 3259233, at *1 (S.D. Miss. Oct. 8, 2009) (citing 21 Fed. Prac. & Proc. § 5037.18).

III.    Analysis

A.     Terral River's First Motion in Limine [97]

Before he died in March 2019, Joe Augustine allegedly told his wife. Sandy, and Road Builders' on-site manager, Jerry Hamilton, that he never ordered the rock at issue in this lawsuit. Terral River says, in its first motion in limine, that any testimony from Mrs. Augustine or Hamilton regarding these statements would be inadmissible hearsay and cannot be offered to

3

support Road Builders' "affirmative defense[ that] Joe Augustine did not order the twelve barge loads of rock from Terral River."  Pl.'s Mem. [98] at 1.[1]

Under Federal Rule of Evidence 802, "[h]earsay is not admissible" unless otherwise provided by "a federal statute," the Federal Rules of Evidence themselves, or "other rules prescribed by the Supreme Court."  Rule 801(c) defines "hearsay" as an out-of-court statement "a party offers in evidence to prove the truth of the matter asserted in the statement."  *Id.* R. 801(c).  Augustine's out-of-court statements denying that he ordered the rock would constitute hearsay if offered to prove he did not make that oral purchase.

Road Builders disagrees, arguing first that Augustine's statements to Hamilton and Mrs. Augustine were verbal acts excluded from Rule 801(c)'s hearsay definition.  "The verbal[-]acts doctrine permits a witness to testify to the fact that an out-of-court conversation occurred rather than to the truth of matters asserted therein."  *United States v. Alvarez*, 584 F.2d 694, 697 (5th Cir. 1978).  When applicable, "the statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights."  Fed. R. Evid. 802, advisory committee notes to 1972 proposed rule.  Thus, "[t]he verbal acts doctrine applies only where the out-of-court statement actually affects the legal rights of the parties, or where legal consequences flow from the fact that the words were said."  *Echo Acceptance Corp. v. Household Retail Servs., Inc.*, 267 F.3d 1068, 1087 (10th Cir. 2001) (internal quotation marks omitted).

---

[1] The absence of a contract is likely a negative defense, not an affirmative defense.  *See Emmons v. S. Pac. Transp. Co.*, 701 F.2d 1112, 1118 (5th Cir. 1983) ("[A] negative defense . . . tends to disprove one or all of the elements of a complaint[, whereas a]n affirmative defense is properly concerned with the pleading of a matter not within the plaintiff's prima facie case, that is, pleading matter to avoid plaintiff's cause of action." (quoting *Gilbert v. Eli Lilly & Co. Inc.*, 56 F.R.D. 116, 123–24 (D.P.R. 1972))).

Neither Hamilton nor Mrs. Augustine describe a verbal act. Nothing either witness says about what Augustine allegedly told them changed any legal rights or created any legal circumstances. *Id.* Moreover, Road Builders hopes to offer the statements for the very purpose of proving "the truth of matters asserted therein." *Alvarez*, 584 F.2d at 697 (noting that verbal acts are admissible to show fact that statements were made and not their truth). If Road Builders offers Augustine's out-of-court statements to prove he never ordered the rock, then Hamilton's and Mrs. Augustine's testimony is inadmissible hearsay.

Alternatively, Road Builders argues that the testimony is admissible under the residual exception to the rule against hearsay, which provides:

> Under the following conditions, a hearsay statement is not excluded by the rule against hearsay . . . :
>
> (1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of the circumstances under which it was made and evidence, if any, corroborating the statement; and
>
> (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

Fed. R. Evid. 807(a).

The Fifth Circuit has explained that this "exception is to be used only rarely, in truly exceptional cases." *United States v. El-Mezain*, 664 F.3d 467, 498 (5th Cir. 2011) (quoting *United States v. Phillips*, 219 F.3d 404, 419 n.23 (5th Cir. 2000)). "The proponent of the statement bears a heavy burden to come forward with indicia of both trustworthiness and probative force. To find a statement trustworthy, a court must find that the declarant of the . . . statement was particularly likely to be telling the truth when the statement was made." *Phillips*, 219 F.3d at 419 n.23 (quoting *United States v. Washington*, 106 F.3d 983, 1001–02 (D.C. Cir. 1997)).

Working backwards through Rule 807's requirements, Road Builders easily establishes the probative element. It persuasively argues that because Augustine died, his "statements to Mrs. Augustine and Mr. Hamilton are more probative for the point that Mr. Augustine didn't order the rock than any other evidence that [Road Builders] can obtain through reasonable efforts." Def.'s Resp. [106] at 4.

The trustworthiness element is trickier. "[T]he focus for trustworthiness is on circumstantial guarantees surrounding the making of the statement itself, as well as any independent evidence corroborating the statement." Fed. R. Evid. 807 advisory committee notes to 2019 amendments. Road Builders offers the following to establish the trustworthiness of the statements:

- Mr. Augustine separately made the same statement to two different individuals, Mrs. Augustine and Hamilton;

- Mr. Augustine made the same statement before and after he had knowledge that the demurrages and fleeting costs were charged[; and]

- Mr. Augustine's statements are corroborated by [Road Builders'] ordinary course of business for ordering rock for this project—Hamilton, [Road Builders'] on-site manager for rock repair would call Teddy Twigg, a Terral [River] employee, to order rock after Hamilton was told by Steve Evans, a [Corps of Engineers] inspector, the type and amount of stone needed and what location to send the stone to.

Def.'s Mem. [106] at 4 (citations omitted).

This is a close call on an important issue, and Terral River chose not to file a reply addressing Road Builders' arguments. In this procedural posture, the Court concludes that the motion should be denied without prejudice to Terral River's right to raise a timely objection at trial.[2]

---

[2] Road Builders also argues that Joe Augustine's statements could be admissible for "numerous" purposes other than establishing the truth of the matter asserted, like explaining why it did not

B.      Terral River's Second and Third Motions in Limine [100, 103]

As explained, after Terral River missed the dispositive-motion deadline, it moved for an extension so it could file motions for partial summary judgment on Road Builders' defenses. Judge Ball denied the motion, and this Court affirmed his decision on appeal. Then, within days of the order affirming Judge Ball's ruling, Terral River filed these motions in limine, both of which track the very same issues Terral River unsuccessfully sought to pursue in delinquent Rule 56 motions. *See* Pl.'s Mot. to Extend Deadline [88].

For example, Terral River asked Judge Ball for extra time to file a Rule 56 motion striking Road Builders' defense that "Terral River proceeded to deliver the rock knowing that Road Builders was not 'ready' to accept deliver," because Terral River had no such duty. *Id.* at 2. In its second motion in limine, Terral River similarly seeks to exclude any proof supporting Road Builders' affirmative defense that Terral River should not have delivered the rock when it did because, *inter alia*, Terral River had no such duty. Pl.'s Mot. [100].

Likewise, Terral River sought leave to file a late motion for summary judgment on Road Builders' mitigation defense. Pl.'s Mot. to Extend Deadline [88] at 2. In its third motion in limine, Terral River asks the Court to exclude evidence supporting the affirmative defense that Terral River failed to mitigate its damages. Pl.'s Mem. [104] at 2. Specifically, Terral River argues that Road Builders should be precluded from offering evidence to support its mitigation defense because Road Builders "has no competent/admissible proof to satisfy the evidentiary predicate that Road Builders must satisfy before such proof would be admissible, namely, that [Terral River] 'should have' accepted this offer under existing circumstances." *Id.* Terral River

---

pay the invoice. Def.'s Mem. [106] at 5. Here again, Terral River's failure to file a reply leaves the argument unanswered.

suggests that expert testimony would be required to establish a failure-to-mitigate defense and argues that the undisputed proof shows that Terral River's failure to mitigate its damages "was 'reasonable under the circumstances' that existed" at the time. *Id.* at 6.

As to both motions, Terral River highlights the absence of evidence supporting Road Builders' defenses, a classic summary-judgment position. Indeed, Terral River never identifies any specific evidence that should be excluded under a particular rule of evidence, and, in 50 pages of supporting memoranda, it cites no rules of evidence or supporting legal authority for excluding evidence beyond a passing reference to Rules 702 and 703. *See* Mem. [101], Mem. [104]. "A motion in limine is not a substitute for a motion for summary judgment, which [Terral River] never filed with respect to any of the affirmative defenses." *Fos v. Wal-Mart Stores East, LP*, No. 1:12-CV-735-LG-JCG, 2015 WL 11120671, at *3 (S.D. Miss. June 2, 2015).

Finally, even as to the general categories of evidence Terral River addresses in these two motions, Terral River can always raise a timely objection at trial. Plus, the subjects are not "so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds." *O'Rear*, 554 F.2d at 1306 n.1 (citation omitted).

IV.  Conclusion

The Court has considered all arguments raised. Those not addressed would not have changed the outcome. As explained above, Terral River's first [97] motion in limine is denied without prejudice. Terral River's second [100] and third [103] motions in limine are denied.

**SO ORDERED AND ADJUDGED** this the 28th day of October, 2021.

                                                  s/ *Daniel P. Jordan III*
                                                  CHIEF UNITED STATES DISTRICT JUDGE